IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| COLORADO CASUALTY INS. CO., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.  2:05cv178-CSC |
| | )                             (WO) |
| THE KIRBY COMPANY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION

This case involves a dispute between plaintiff Colorado Casualty Insurance Company ("Colorado Casualty") and defendants The Kirby Company ("Kirby"), National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and Bill Cavins ("Cavins").[1] Colorado Casualty asserts that it is under no duty to indemnify National Union for costs awarded in a lawsuit filed by National Union in this court.  *See National Union Fire Ins. Co. v. Cavins, et al.*, Civil Action No. 2:03cv878-CSC (M.D. Ala. 2005) *rev'd* 226 Fed. Appx. 895 (11th Cir. 2007) *cert denied*, 128 S.Ct. 536 (Nov. 5, 2007).  Colorado Casualty requests that this court enter a judgment declaring "that no coverage shall be afforded to the Defendants under the policies of insurance issued by Colorado Casualty." (Compl. at 7).  In the alternative, Colorado Casualty seeks to limit coverage to the amounts of coverage

---

[1] The other named defendant, Progressive Systems, Inc. ("Progressive"), was never served, *see* FED. R. CIV. P . 4(h)(1), and thus, is not a party to this action.  Virginia Cavins was neither named nor served so she is also not a party to this action.

remaining under policies CPP 661544-01 and CPP 661544-02.[2]  National Union makes no counterclaims in this action.

The court has jurisdiction of this case pursuant to 28 U.S.C. § 1332 and the Declaratory Judgment Act, 28 U.S.C. § 2201.  The parties have consented to a United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1.

This matter is now pending before the court on  competing motions for summary judgement filed on October 27, 2006.  *See* Docs. # 48 & 49.  Upon consideration of the motions, pleadings, responses and evidentiary material filed in support of and in opposition to the motions, the court concludes the plaintiff's motion for summary judgment is due to be denied and the defendants' motion for summary judgment is due to be granted.

## II.  THE SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c) summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[3]  The party moving for summary judgment "always bears the initial responsibility of

---

[2] Colorado Casualty asserts that only $13,000.00 remains available under policy CPP 661544-01 and only $315,000.00 remains available under policy CPP 661544-02.  *See* Compl. at 5, ¶ 11.

[3] In *Celotex Corp.v. Catrett*, 477 U.S. 317 (1986), the court stated:

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue...Rule 56(e)...requires the nonmoving party to go beyond the pleadings and by...affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial...We do not mean that

informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant may meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324. If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case exists. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993); *see also* FED. R. CIV. P. 56(e). ("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response ... must set forth specific facts showing that there is a genuine issue for trial."). What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather,

---

> the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment...Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) except the mere pleadings themselves. . .

*Id.* at 324.

the non-movant must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n. 6 (11th Cir. 1997); *Harris v. Ostrout,* 65 F.3d 912 (11th Cir. 1995). However, if there is a conflict in the evidence, "the [plaintiff's] evidence is to be believed and all reasonable inferences must be drawn in his favor." *Anderson*, 477 U.S. at 255; *Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law FED. R. CIV. P. 56(c). With these principles of law in mind, the court will determine now whether summary judgment is appropriate and should be granted.

### III. FACTS

On September 29, 1988, defendant Bill Cavins entered into a "Distributor Agreement" with Kirby. The agreement described Cavins as "an independent contractor authorized to distribute Kirby products." The agreement also contained the following indemnification provision.

> 19(b) *Distributor's Indemnification*. Distributor shall indemnify the Company, its employees, agents and servants and hold the Company and its said employees, agents and servants harmless from any and all liability, damage or expense incurred by it in connection with any claim, demand or suit based on Distributor's acts or omissions, including alleged negligence; provided, however, that the Company shall (1) give Distributor prompt written notice of any such claim, demand or suit, and (2) provide Distributor with every reasonable assistance which the Distributor may request in resisting such

claim, demand or suit. The foregoing indemnification shall not apply if the Company is found guilty of any negligence, misconduct or wrongdoing in connection with any such claim, demand or suit.

The agreement also specified that it would be governed by Ohio law.

In 1996, Bill Cavins assigned the distributor agreement to Progressive, a corporation he owned with his wife, Virginia, so that the Cavins, Progressive and their agents could sell Kirby vacuum cleaners, accessories and supplies. Sometime thereafter, many of the defendants' clients made claims and filed suit in state courts against Progressive, the Cavins and Kirby as a result of their financing practices on Kirby products.[4] The underlying state court actions included claims of fraud, negligence, wantonness, misrepresentation, and conspiracy to defraud. Because National Union insured Kirby, National Union defended Kirby in the underlying actions. The Cavins and Progressive were insured by Colorado Casualty and Colorado Casualty represented them in those state court cases.

National Union, on behalf of Kirby, subsequently settled 91 lawsuits for a total of $830,550.00. While defending Kirby in the underlying actions, National Union also incurred $748,462.75 in attorney's fees. Pursuant to the indemnification provision in the distributor agreement, Kirby demanded indemnification from Colorado Casualty, the defendants' insurance carrier. When Kirby made the demand, Colorado Casualty declined indemnity to Kirby pending further investigation.

Thereafter, Kirby assigned its right to pursue indemnity under the Distributor

---

[4] The plaintiffs in the underlying state court actions claimed that the defendants led them to believe that they could pay off the accounts in a specified period of time by paying the suggested payment. However, because high interest rates were attached to the accounts, the plaintiffs' debts continued to rise, despite making the monthly payments.

Agreement to National Union, and National Union filed a breach of contract action in this court on August 25, 2003. *National Union Fire Ins. Co. v. Cavins, et al.*, Civil Action No. 2:03cv878-CSC (M.D. Ala. 2006) *rev'd* 226 Fed. Appx. 895 (11th Cir. 2007). In that action, National Union sought indemnification and reimbursement from the Cavins and Progressive for the costs incurred as a result of settling the state court claims against its insured, Kirby. Consequently, National Union sought indemnification in the amount of $748,462.75 in defense costs and $830,550.00 in indemnity costs to defend and settle the underlying state court claims.

After National Union conceded that it could not meet its burden of regarding the underlying settlements in accordance with *Glove Indemnity Co. v. Schmitt*, 142 Ohio St. 593, 53 N.E.2d 790, 794 (Ohio 1944), the court concluded that National Union was not entitled to recoup its settlement costs in the amount. *See National Union,* Civ. Act. No. 2:03cv878-CSC, (*Mem. Opinion and Order,* doc. # 65). Nonetheless, National Union argued that, pursuant to the indemnification agreement, it was entitled to recoup $748,462.75 in attorney fees incurred in the defense of the underlying state court actions. The court agreed and entered judgment in favor of National Union and against the defendants and awarded National Union $748,462.75 in attorney fees against Bill Cavins, Virginia Cavins and Progressive. *Id.* at docs. 70 & 71.

On appeal, the Eleventh Circuit reversed the judgment as to Bill Cavins who was the only defendant to perfect an appeal. *See Nat'l Union Fire Ins. Co.*, 226 Fed. Appx. at 896. The court specifically concluded that because neither Virginia Cavins nor Progressive were

named in the notice of appeal, they were not proper parties to the appeal. *Id*. at 898-99.

The court next determined that, under Ohio law, "National Union was not entitled to indemnification for the attorney's fees incurred in the state court litigation that settled."[5] The court reversed the award of attorney's fees with respect to Bill Cavins as the only defendant party to the appeal. *Id*. at 900. That decision paves the way for the next question which is whether Colorado Casualty owes National Union anything.

Colorado Casualty issued to Progressive a Commercial General Liability Occurrence Policy, policy number CPP 0661544-01. The policy covered Progressive from September 17, 1997, to September 17, 1998.[6] (Doc. # 76, Ex. A). Section I(A) of the policy provides coverage for bodily injury and property damage liability while Section I(B) contains the policy's exclusions. (*Id.*). The Insuring Agreement provides as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

(*Id*.).

---

[5] The Eleventh Circuit did a better job of researching than this court or the lawyers. "A decision of the Supreme Court of Ohio [*New York Central R. Co. V. Linamen*, 171 Ohio St. 87, 167 N.E. 2d 778 (Oh. 1960)] which the parties failed to cite to this Court or the magistrate judge, squarely resolves the question . . ." *Nat'l Union Fire Ins. Co. V. Cavins*, 226 Fed. Appx. 895, 900 (11th Cir. 2007).

[6] The policy was renewed for the periods of September 17, 1998 to September 17, 1999 and September 17, 1999 to September 17, 2000.

## IV.  DISCUSSION

The crux of the matter before the court is whether Colorado Casualty is obligated to indemnify National Union for attorney fees awarded in the underlying action.  Colorado Casualty seeks a declaration that because its policies do not cover the judgment entered against Progressive, National Union cannot collect the attorney's fees award.[7]  The Eleventh Circuit's decision on March 19, 2007, in *National Union Fire Ins. Co.*, *supra*, effectively renders moot. Colorado Casualty's motion for summary judgment against Bill Cavins[8]

### A.  Colorado Casualty's Motion for Summary Judgment

In its motion for summary judgment, Colorado Casualty argues that National Union cannot recover under Progressive's policies because Bill Cavins submitted an affidavit in the underlying state law cases that absolved Kirby of responsibility in those cases and "neutralized" Colorado Casualty's ability to defend those actions.  Specifically, Colorado Casualty contends that Cavins violated section (2)(c)(3) of the insurance policy that requires the insured to "cooperate with us in the investigation or settlement of the claim or defense against the "suit."[9]

---

[7] National Union stands in the shoes of Progressive in this action.

[8] Virginia Cavins is not named as a defendant in this action nor is she named on the insurance policy that covers Progressive.

[9] Colorado Casualty also cites subsection (2)(d), assumption of an obligation without Colorado Casualty's consent, as a basis for summary judgment.  Subsection 2(d) provides, in its entirety, that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."  However, Colorado Casualty alleges no facts and makes no argument in its brief regarding this aspect of its claim.  It does not point to or otherwise provide the court with any evidence to substantiate its allegation that Cavins "assumed any obligation" without its knowledge or consent.  Its brief does not contain a discussion of any legal authority in support of this claim. The burden is on the parties to formulate arguments and grounds alleged in the complaint but not relied upon

> In voluntarily providing an affidavit to Kirby absolving it of any liability in the underlying litigation, Cavins clearly failed to cooperate with Colorado Casualty as he was contractually required in order to recover under the Policies. Cavins' actions in giving the affidavit and later recanting it are in direct conflict with Colorado Casualty's right to know from the insured the facts of a claim in order to decide whether to contest the claim.

(Mot. for Summ. J. at 9) (emphasis in original). Colorado Casualty argues that in the 1999 affidavit, Cavins "admit[ted] his fault and absolve[d]" Kirby of any liability. (*Id*. at 10).

National Union, on the other hand, asserts that (1) the 1999 affidavit contained no misrepresentations; (2) Cavins never recanted the statements contained in the 1999 affidavit;[10] (3) using the affidavit during litigation does not constitute non-cooperation;[11] and (4) by waiting until February 2005 when this action was filed, to raise non-cooperation as a bar to coverage, Colorado Casualty has waived this defense.[12] In addition, in opposition to Colorado Casualty's motion for summary judgment, Bill Cavins submitted yet another affidavit[13] in which he avers that "[t]he affidavit was prepared in lieu of being deposed. Had

---

in responding to a motion for summary judgment are deemed abandoned. *See Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994). Accordingly, the court concludes that Colorado Casualty has abandoned its claim that Cavins assumed an obligation without its knowledge.

[10] On November 15, 2004, Cavins provided an undated affidavit in *National Union Fire Ins. Co. v. Cavins*, 2:03cv878-CSC (M.D. Ala.), in opposition to summary judgment (doc. # 32). For simplicity's sake, the court will refer to Cavins' original affidavit filed in the state law cases as his 1999 affidavit and will refer to the second affidavit as the 2004 affidavit.

[11] According to Cavins, he executed the affidavit after his attorney, who was hired by Colorado Casualty to represent him, reviewed and approved it.

[12] National Union asserts that Colorado Casualty was aware of the 1999 affidavit when Cavins executed it because Cavins executed the affidavit after the attorney retained by Colorado Casualty to represent Cavins, reviewed and approved of the affidavit.

[13] The court will refer to this affidavit as the 2006 affidavit.

9

I been deposed instead of requested to provide an affidavit, I would have answered questions consistently with the facts set forth in the affidavit." (Defs' Resp. to Pl's Mot. for Summ. J., Ex. A at 2, doc. # 54). Relying on Cavins' 2004 affidavit, National Union argues that the 1999 affidavit was true and correct, contained no misrepresentations, and the 2004 affidavit did not recant or contradict any facts given in the 1999 affidavit (Def. Nat'l Union's Resp. to Pl's Mot. for Summ. J. at 3).

"The burden of proof to establish non-cooperation rest[s] upon the insurer." *Employers Ins. Co. Of Ala. v. Crook*, 160 So.2d 463, 465 (Ala. 1964). *See also Ex parte Clarke*, 728 So.2d 135, 141 (Ala. 1998); *State Farm Mut. Auto. Ins. Co. v. Hanna*, 166 So. 2d 872, 877 (Ala. 1964) ("Lack of cooperation being an affirmative defense, the burden was upon the insurer to establish such a defense."). In order for non-cooperation to constitute a breach of insurance coverage, the lack of cooperation must be "both material and substantial." *Clarke*, 728 So.2d at 141; *Williams v. Ala. Farm Bureau Mut. Cas. Ins. Co.*, 416 So. 2d 744, 746 (Ala. 1982); *Home Indem. Co. v. Reed Equip. Co., Inc*., 381 So.2d 45, 48 (Ala. 1980); *Auto-Owners Ins. Co., Inc. v. Rodgers*, 360 So. 2d 716, 718 (Ala. 1978); *Ala. Farm Bureau Mut. Cas. Ins. Co. v. Teague*, 110 So. 2d 290, 294 (Ala. 1959). "The "test for determining what is material and substantial with respect to an insured's alleged failure to cooperate" amounts to a "requirement of prejudice to the insurer."" *Williams*, 416 So. 2d at 746. *See also Home Indem. Co*., 381 So.2d at 48 (holding that determination that non-cooperation was material and substantial requires a showing of prejudice). Non-cooperation is deemed prejudicial if the failure to cooperate "negate[s] the only evidence the insurer

could offer in defense," *Williams*, 416 So.2d at 747, or the insurer is deprived of the opportunity to conduct an investigation and mount a defense. *See generally United States Fire Ins. Co. v. Watts*, 370 F.2d 405 (5th Cir. 1966).[14] "What constitutes a failure of cooperation by the insured is usually a question of fact." *Clarke*, 728 So.2d at 141; *Crook*, 160 So.2d at 465. Additionally, "the ultimate question of whether or not the noncooperation is material and substantial is a question for the trier of fact." *Williams*, 416 So. 2d at 747. Finally, non-cooperation is an affirmative defense which the insurer can waive. *United States Fidelity & Guaranty Co. v. Remond*, 129 So. 15, 16 (Ala. 1930). *See also Clarke*, 728 So.2d at 140; *Hanna*, 166 So.2d at 877; *Crook*, 160 So.2d at 469-70.

In his 1999 affidavit, Cavins asserted that Kirby was not a party to any of Progressive's financing; Kirby did not "receive information about the final sales price or whether any portion of the purchase price [wa]s financed;" and Kirby had "no knowledge . . . of outside financing." (Pl's Mot. for Summ. J., doc. # 48, Ex. A, at 1-2 , ¶ 3-4.) In his 2004 affidavit, Cavins postulated that

> [I]t is my belief that the Kirby Company was keenly aware of the use of American Direct Credit LLC (ADC) by not only myself in selling Kirby Company products but also by many other Kirby Company distributors. In fact, a number of sales meetings took place in which the use of ADC financing was specifically discussed, but also was encouraged by representatives of the Kirby Company who were present at a number of these distributor meetings. . . . I feel that it is unfair and unethical to impose the costs of Kirby's (sic) Company's defense settlement costs upon me in this case when Kirby was very aware of the use (sic) ADC by not only myself but by numerous other Kirby distributors. In fact, Kirby Company executives communicated to me

---

[14] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

>    the company's pleasure with the increased sales volume generated through the
>    use of ADC financing.

*See National Union Fire Ins. Co.*, 2:03cv878-CSC, at doc. # 32 at 18. Finally, in his 2006 affidavit, Cavins again asserts that "[t]he affidavit is not inconsistent with any other affidavit or testimony I have provided." (Def. Nat'l Union's Resp. to Pl's Mot. for Summ. J., doc. # 54, Ex. A).

According to Colorado Casualty, by providing the affidavit in the underlying state law claims, Cavins breached the non-cooperation provision and "voided his coverage under the plain language of his insurance agreement with Colorado Casualty." (Pl's Mot. for Summ. J. at 2). Colorado Casualty's arguments miss the mark. Without more, simply executing the 1999 affidavit did not constitute non-cooperation sufficient to breach the insurance contract. To void insurance coverage based on non-cooperation, it is insufficient to merely establish non-cooperation. Non-cooperation must be substantial and material, and Colorado Casualty must demonstrate prejudice.

Moreover, the court concludes that, at a minimum, Cavins' affidavits create disputed issues of fact which preclude summary judgment. The parties dispute whether Cavins made misrepresentations in the 1999 affidavit and whether his 2004 affidavit recanted any part of the 1999 affidavit. With respect to the extent of Kirby's *knowledge* regarding Progressive's financing, the affidavits at the very least are inconsistent. The parties also dispute the *effect* of any misrepresentation, i.e. whether any misrepresentations in Cavins' affidavits constitute non-cooperation within the meaning of the policies. The court is simply not prepared to resolve these issues based on the meager record before it. The lack of factual development

regarding the 1999 affidavit, its effects on Colorado Casualty's decision to settle the underlying state court cases, and Colorado Casualty's knowledge and actions regarding the 1999 and 2004 affidavits compels the court to conclude that summary judgment is not appropriate based on the record before it. "[E]ven in the absence of a factual dispute, a district court has the power to 'deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255. *See also United States v. Certain Real & Personal Prop. Belonging to Hayes*, 943 F.2d 1292 (11th Cir. 1991) ("A trial court is permitted, in its discretion, to deny even a well-supported motion for summary judgment, if it believes the case would benefit from a full hearing."). Accordingly, for the reasons as stated, the court concludes that Colorado Casualty's motion for summary judgment (doc. # 48) is due to be denied.

### B. National Union's Motion for Partial Judgment

On October 27, 2007, National Union filed a motion for partial summary judgment "limited to the issue of whether coverage is available under Policy Numbers CPP 661544-01 and 661544-02 and the amounts available under each policy." (Mot. for Partial Summ. J., doc. # 49 at 1). The motion specifically "does not address coverage issues with regard to Policy Number CPP 661544-03." (*Id.*) National Union argues that because the Distributor Agreement constitutes an "insured contract," coverage exists under the policy to entitle it to recover its judgment against Progressive.[15]

---

[15] Progressive has assigned to National Union and Kirby its rights under the insurance policies. Consequently, National Union and Kirby stand in the shoes of Progressive in this action.

**1.    Colorado Casualty's failure to respond to National Union's partial motion for summary judgment.**  After being given an opportunity, Colorado Casualty failed to file a response to National Union's partial motion for summary judgment.  Consequently, the plaintiff has failed to state any reason why the partial motion for summary judgment should be denied.

> In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him." *Ryan v. Int'l Union of Operating Eng'rs, Local,* 675, 794 F.2d 641, 643 (11th Cir. 1986). There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. *Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990).  Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned. *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994).

*Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995).  The burden is on the party opposing summary judgment to submit affirmative evidence demonstrating that there exists a genuine issue of material fact regarding an essential element of the claim. *Celotex,* 477 U.S. at 322.  The plaintiff must go beyond the pleadings and "designate 'specific facts' showing that there is a genuine issue for trial." *Id.* at 324.  Based on the plaintiff's failure to respond, the court could summarily grant the defendants' partial motion for summary judgment because the plaintiff has neither submitted to the court any evidence or legal authority in opposition to the motion for summary judgment, nor does it submit any affirmative evidence demonstrating that there exists genuine issues of material fact. However, out of an abundance of caution, the court will address National Union's specific

argument in support of its partial motion for summary judgment.[16]

**2. Insured Contract**. National Union argues that the distributor agreement between Progressive and Kirby, which contains an indemnification provision, constitutes an "insured contract" under policies CCP 661544-01 and CCP 661544-02. There is no dispute that these two policies were in effect at the time the underlying state law claims were settled. The parties do not dispute the substance of the policies. Rather, the dispute in this case centers on whether specific provisions contained in the policies require Colorado Casualty to indemnify National Union.

Colorado Casualty's insurance policies provide that it "will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury"or "property damages" to which this insurance applies." (Compl. Ex. A, Section 1(a)).[17] The policies contain a contractual liability exclusion. "This insurance does not apply to . . . "[c]ontractual liability" which is defined in the policy as "[b]odily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract

---

[16] National Union also argues that there exists supplementary payment coverage under the policy that would permit it to recoup the full amount of the judgment against Progressive because Colorado Casualty wrongfully denied Kirby a defense. National Union did not file a counterclaim in this action seeking a determination of whether Colorado Casualty wrongfully denied Kirby a defense. The time to properly present this claim has long past and the court will not permit National Union to inject a new claim in the first instance in a motion for summary judgment. *Cf. Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004) (holding that a motion to amend is proper vehicle to assert new claim , not in a brief opposing summary judgment); *Chavis v. Clayton County Sch. Dist.*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (same). Consequently, the court concludes that this claim is not properly before it for resolution.

[17] Because the copy of the original policy was not a complete copy, the court directed the plaintiff to submit a complete and accurate copy of all the policies. Colorado Casualty has provided copies of the insurance policies at issue. *See* Doc. # 79, Exs. A-C. Except for the dates of coverage, the policies appear to be the same. Consequently, for fluidity, the court will cite to only one policy, the original policy, which can be found either attached to the complaint or attached to Document # 79 as Exhibit A.

or agreement." (*Id.* at § 2(b)).  The policy also contains an exception to the exclusion.

This exclusion does not apply to liability for damages:

> . . .
>
> (2) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:
>
>> (a)  Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
>>
>> (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

(*Id.* at § 2(b)(2)).

Finally, the policies define an "insured contract" as

> [t]hat part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(Resp. to Court Order, doc. # 76, Ex. 1 at 26-27.)

The indemnification provision contained in the Distributor Agreement meets the definition of an insured contract under the insurance policy because Progressive agreed to

assume any and all liability which Kirby incurred as a result of any claim, demand or suit against it.[18] Consequently, the court concludes that the "insured contract" exception to the contractual exclusion applies and coverage under the policy exists.

The burden is on National Union as the insured to demonstrate that there is coverage under the policy. *See Jordan v. National Accident. Ins. Underwriters, Inc.*, 922 F.2d 732, 735 (11th Cir. 1991) ("Under Alabama law the general rule is that the insured bears the burden of proving coverage." ). *See also Colonial Life and Accident Ins. Co. v. Collins*, 194 So.2d 532, 535 (1967). Colorado Casualty alleges no facts and makes no argument in response to the National Union's argument that the indemnification provision in the Distributor Agreement constitutes an insured contract under the policies, and thus, is an exception to the contractual exclusion provision. It does not provide the court with any evidence, nor does it point the court to any legal authority to counter the National Union's contentions. Consequently, the court concludes that Colorado Casualty has failed to demonstrate that there exists a genuine issue of material fact about whether the Distributor Agreement constitutes an insured contract under the policy sufficient to trigger the exception to the contractual exclusion provision. Accordingly, the court concludes that National Union has met its burden of demonstrating that coverage is available under Colorado Casualty's

---

[18] The indemnification provision, in pertinent part, reads as follows:

> 19(b) *Distributor's Indemnification*. Distributor shall indemnify the Company, its employees, agents and servants and hold the Company and its said employees, agents and servants harmless from any and all liability, damage or expense incurred by it in connection with any claim, demand or suit based on Distributor's acts or omissions, including alleged negligence . . .

policies. National Union and Kirby are entitled to summary judgment on this basis.

## V. CONCLUSION

Accordingly, for the reasons as stated in this memorandum opinion, it is

ORDERED as follows:

1. That Colorado Casualty's motion for summary judgment (doc. # 48) be and is hereby DENIED;

2. That National Union and Kirby's partial motion for summary judgment (doc. # 49) be and is hereby GRANTED and it be and is hereby DECLARED that coverage exists under insurance policies CPP 661544-01 and CPP 661544-02 for National Union to recover its judgment against Progressive.

3. That this matter be and is hereby set for a status and scheduling conference at 10:00 a.m. on February 4, 2008 in Courtroom 4B, United States Courthouse Complex, One Church Street, Montgomery, Alabama.

Done this 14th day of January, 2008.

                                  /s/Charles S. Coody
                                  CHARLES S. COODY
                                  CHIEF UNITED STATES MAGISTRATE JUDGE